## Alexandria
## JAMES RUSSELL PHILLIPS
## v.
## COMMONWEALTH OF VIRGINIA
No. 0693-92-4
Decided September 7, 1993

COUNSEL

W. Michael Phipps (Evans & Phipps, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**— In this criminal appeal, we hold that a police officer did not violate the Fourth Amendment when he opened a closed pouch discovered on James Phillips during a pat-down search because the officer reasonably believed that the pouch may have contained a weapon that posed a threat to him or to the public. Therefore, we uphold the trial judge's decision to admit into evidence the drug paraphernalia found inside Phillips' pouch as evidence obtained pursuant to a lawful search. Accordingly, Phillips' conviction of heroin possession is affirmed.

On October 9, 1991, Prince William County Police Officer James E. Virgil, Jr., received a call of a breaking and entering in progress. The complainant, Gladys Rafter, told police that she believed her grandson, James Russell Phillips, was breaking into her house. She said that Phillips had been violent and had used drugs in the past. Virgil received a second transmission that Phillips was inside Rafter's house and was acting violently. A third transmission informed Virgil that Phillips was leaving the house. As Virgil approached Rafter's house, he saw Phillips coming out the front door. Phillips was the only person in the area who matched the physical description of the intruder received over the radio.

Virgil approached Phillips and told him to put his hands in the air. Virgil was alone; no back-up officer had yet arrived. Virgil began to pat down Phillips for weapons. As he did so, he felt a bulge on Phillips' left side. Phillips began to bring his hand down. Virgil ordered him to put his hands back up. The bulge was larger than Virgil's hand and felt hard. When he squeezed it, he felt a long cylindrical object. He testified that he believed that the object might be a knife or a gun.

When Virgil removed the object, he found it to be a pouch which contained a hard cylindrical object. The pouch was large enough to hold a gun or knife. Virgil asked Phillips if he could look inside the pouch. Phillips answered, "No, there's nothing in it but personal items." Virgil opened the pouch and discovered six hypodermic needles, a black shoe lace, a spoon with a burnt residue and a "baggie" containing residue. Virgil's back-up arrived, and Virgil placed Phillips under arrest for possession of drug paraphernalia and possession of a controlled substance.

■ The Fourth Amendment does not protect citizens against all searches and seizures, only unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 9 (1968). When a police officer reasonably believes, based on specific and articulable facts, that a person is involved in criminal activity, the officer may, after identifying himself, detain the person briefly for the purpose of confirming or dispelling his suspicion. *Id.* at 21-22; *Leeth v. Commonwealth,* 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982); *Williams v. Commonwealth,* 4 Va. App. 53, 65, 354 S.E.2d 79, 85-86 (1987). Once the police officer has properly detained a suspect for questioning, he may conduct a limited pat-down search of the suspect's outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous. *Terry,* 392 U.S. at 30; *Lansdown v. Commonwealth,* 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), *cert. denied,* 465 U.S. 1104 (1984); *Williams,* 4 Va. App. at 66-67, 354 S.E.2d at 86; Code § 19.2-83.

■ If, during the pat-down search, the police officer feels an object that he reasonably believes could be a dangerous weapon, the officer may seize the object from the suspect's person. *Lansdown,* 226 Va. at 213, 308 S.E.2d at 112; *Simmons v. Commonwealth,* 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977); *see also* 3 Wayne R. LaFave, *Search and Seizure* § 9.4(d) (2d ed. 1987). When the object seized is a closed container, the question is whether the officer can search inside the container. We must decide whether, under the circumstances, Officer Virgil could open the closed pouch and examine its contents.

■ A protective weapons search must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20. "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen,* 466 U.S. 109, 124 (1984). The reasonableness of a weapons search is determined by balancing the State's interest in searching against the individual's interest in freedom from unreasonable government intrusions. *Terry,* 392 U.S. at 21; *see also Jacobsen,* 466 U.S. at 125. The search is judged by an objective standard of reasonableness, taking into account the "totality of the circumstances." *See United States v. Cortez,* 449 U.S. 411, 417 (1981) (reasonableness of a *Terry* stop); *Lansdown,* 226 Va. at 212, 308 S.E.2d at 112.

■ The purpose of a pat-down search during a *Terry* stop is to facilitate the police officer's limited investigation of suspected criminal activity without fear or threat of violence. *Adams v. Williams,* 407 U.S. 143, 146 (1972). Thus, it is reasonable under the Fourth Amendment for a police officer, who has seized a closed container during a pat-down search, to examine the contents of that container when he reasonably believes, based on specific and articulable facts, that it may contain a weapon and that a search of the container is necessary to protect himself or the public from an immediate threat of harm. *Docksteader v. Commonwealth,* 802 S.W.2d 149, 150-51 (Ky. Ct. App. 1991); *People v. Martinez,* 801 P.2d 542, 544 (Colo. 1990); *People v. White,* 549 N.Y.S.2d 492, 493-94 (N.Y. App. Div. 1989), *appeal denied,* 555 N.E.2d 628 (N.Y. 1990); *Neal v. State,* 696 P.2d 508, 509 (Okla. Crim. App. 1985); *State v. Ortiz,* 683 P.2d 822, 826-27 (Haw. 1984); *State v. Cavegn,* 294 N.W.2d 717, 721-22 (Minn.), *cert. denied,* 449 U.S. 1017 (1980).

■ Phillips contends that once Officer Virgil removed the pouch from Phillips' possession and control, the threat of harm to Virgil or the public no longer existed justifying an intrusion into his privacy interest by opening the pouch and examining its contents. We do not agree. If an officer seizes an object during a pat-down search because he believes it could be a weapon, but then, upon removal, discovers that it is neither a weapon nor evidence giving probable cause for an arrest, the officer must return the object to the suspect once the *Terry* stop is terminated. LaFave, *supra,* § 9.4(d); *see also* Code § 19.2-83. It would defeat the purpose of a protective pat-down search to require a police officer, who seizes a closed container during a pat-down search on the reasonable suspicion that it contained a weapon, to return the container unexamined simply because it is neither a weapon nor evidence of a crime. "Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize." *Ortiz,* 683 P.2d at 827 (citing 3 Wayne R. LaFave, *Search and Seizure* § 9.4(d) n.128 (1978), and *Adams v. Williams,* 407 U.S. 143, 146 (1972)); *see also Docksteader,* 802 S.W.2d at 150-51.

"Specific" and "articulable facts" support Officer Virgil's objectively reasonable belief that Phillips' pouch may have contained a dangerous weapon, and that a search of the pouch was necessary for his own protection. During the pat-down, Virgil felt an object that was hard and cylindrical in shape, leading him to believe that the object might be a gun or knife. *See Ortiz,* 683 P.2d at 826. As Virgil felt the

object, Phillips began to bring his hands down. *See id.* The pouch which Virgil seized from Phillips and which contained the hard, cylindrical object was large enough to hold a weapon. Finally, Virgil was alone with Phillips, who was reported to him to have been violent. *See id.*

Given these circumstances, it was reasonable for Officer Virgil to search inside the pouch to determine whether it contained a weapon that could have been used to harm him. Accordingly, the contents of the pouch were properly admitted into evidence as the product of a lawful search and seizure. For these reasons, Phillips' conviction is affirmed.

*Affirmed.*

Barrow, J., and Koontz, J., concurred.