COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


KENNETH JACKSON

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2096-98-2           JUDGE DONALD W. LEMONS
                                         MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF HENRICO COUNTY
                L. A. Harris, Jr., Judge

        Esther J. Windmueller for appellant.

        Eugene Murphy, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    Kenneth Jackson appeals his conviction upon a conditional

guilty plea to possession of cocaine and possession of heroin.

Jackson reserved his right to appeal the denial of his

suppression motion. Finding no error, we affirm his

convictions.

                    I.  BACKGROUND

    "'Ultimate questions of reasonable suspicion and probable

cause to make a warrantless search involve questions of both law

and fact and are reviewed de novo on appeal.'" McGee v.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997)

(en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691

_____
        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

(1996).  This Court, however, is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  Id. at 198, 481 S.E.2d at 261 (citation omitted).

On October 10, 1997, at approximately nine o'clock in the evening, Henrico County Police Officer Glen Hubbard drove to the 3600 block of Kings Pointe Drive in response to a radio call he received.  An anonymous caller had reported that a prowler was looking into windows in the back of the apartment complex at that address.  Several similar reports had been received by police in the previous two weeks concerning the same apartment complex.  This call described a black male, approximately six feet tall, slender, wearing a black jogging suit, walking in the rear of that apartment building, and "looking in rear windows."

Within two minutes of the call, Officer Hubbard arrived at the complex and within one and one-half minutes saw the defendant, Kenneth Jackson, who matched the anonymous caller's description of the suspect precisely where the caller said there was a prowler.  Jackson walked at a fast pace toward the front of the building.  Before Jackson reached the front of the building, Officer Hubbard asked to speak with him.  The defendant ignored Hubbard and proceeded to the front of the building, opened the door to the apartment and started to cross

the threshold.  By this time, Officer Edward Smith had joined Officer Hubbard at the entrance to the apartment.

As he was opening the door, Jackson "reached down real quick and started fumbling" and retrieved items "from underneath his pants leg."  One of the items appeared to be a shotgun shell.  Jackson placed the shotgun shell and other, as yet unidentified, items inside the apartment out of view of the officer but within arm's reach of Jackson.  Jackson remained outside the door.

At that time, Hubbard noticed a woman walking toward the doorway from inside the apartment and he "asked her to stop where she was at, which was about halfway between the back of the apartment to the front door."  She stopped and Hubbard walked through the doorway into the apartment while Officer Smith detained Jackson outside the door.

During Hubbard's conversation with the woman, he saw some items on the inside ledge of the window near the door where Jackson had placed the items he had in his possession.  Hubbard seized the items that consisted of a cigarette pack, a crack pipe, and a shotgun shell casing.

Hubbard pointed out the shell and crack pipe to Smith who placed Jackson under arrest for possession of cocaine.  A search of Jackson incident to arrest revealed a wadded up napkin and a foil packet that contained an off white powder.  Subsequent analysis of both items confirmed that the items contained

cocaine and heroin. Although the officers did not know it at the time, the residence was Jackson's.

## II. TERRY STOP

When a defendant appeals a trial court's denial of his motion to suppress evidence, "the burden is on appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial . . . constituted reversible error." Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993).

To conduct an investigatory stop of an individual, the police must possess reasonable suspicion based on articulable facts that the individual is, or has been, engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993). "[A]nonymous information that has been sufficiently corroborated may furnish reasonable suspicion justifying an investigative stop." Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993) (citing Alabama v. White, 496 U.S. 325, 331 (1990)). The independent corroboration gives "some degree of reliability to the other allegations" of the informant. Id.

Here, an anonymous caller gave police a description of a prowler and his location. Within a few minutes of the call, the officer observed the defendant who matched the clothing and physical descriptions given by the caller. The suspect's

physical characteristics, the clothing he would be wearing and his location were all confirmed by police upon arrival.

Additionally, when the officer reached the location, the defendant behaved suspiciously. He walked quickly by the officers and did not respond to their questions. As he entered the apartment, he "reached down real quick and started fumbling." He then removed some items including one that appeared to be the casing of a shotgun shell. When viewed in the light most favorable to the Commonwealth, these facts support a reasonable, articulable suspicion that Jackson was or had been engaged in criminal activity. A Terry stop to investigate further was proper.

### III.  CROSSING THE THRESHOLD

Once a police officer has properly detained a suspect for questioning, he may conduct a limited pat-down search of the suspect for weapons if he reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous. See Phillips, 17 Va. App. at 30, 434 S.E.2d at 920. The officer need only "'reasonably believe[] that the individual might be armed.'" Lansdown v. Commonwealth, 226 Va. 204, 211, 308 S.E.2d 106, 111 (1983) (quoting Simmons v. Commonwealth, 217 Va. 552, 556, 231 S.E.2d 218, 220-21 (1977)), cert. denied, 465 U.S. 1104 (1984). The officer may rely upon the totality of the circumstances and may consider any suspicious actions of the person searched, such as an obvious attempt to avoid the officer

or any nervous conduct based on the discovery of the officer's presence. See United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977), cert. denied, 435 U.S. 946 (1978). See also Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987).

Officer Hubbard was justified in making a Terry stop when the tip had been corroborated. The stop did not occur immediately because Jackson ignored the officer's questions. Jackson's refusal to stop combined with his furtive movements at the doorway and his placement of items inside the threshold further heightened the officer's suspicion and concern. Upon seeing what appeared to be a shotgun shell among the items and the appearance of a third, as yet unidentified, person on the scene, the officer's concern for his safety and that of the third party justified a pat-down search and a search of the area within Jackson's immediate control and that of the third person. See Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988). The officers did not know if the woman walking toward the area where the shotgun shell and other items had been placed was a potential victim or a potential accomplice of Jackson. In the split second within which decisions must be made on the street, Officer Hubbard reasonably concluded that ascertaining what had been placed immediately within the threshold was necessary for officer safety or for the safety of this, as yet unidentified, woman.

"[F]risking for weapons based upon the exigency of protecting an officer's safety is not limited to a pat-down of the suspect but may extend to nearby vehicles . . . or rooms or premises to which the suspect may retreat to secure a weapon." Washington v. Commonwealth, 29 Va. App. 5, 14, 509 S.E.2d 512, 516 (1999) (en banc). The Fourth Amendment does not require police to desist from effecting an otherwise valid Terry stop simply because the suspect moves from his porch to the living room through a still opened door. See Harbin v. City of Alexandria 712 F. Supp. 67, 72 (E.D.Va 1989). "If the suspect moves about, an officer is justified in staying with the individual during the course of the stop and conducting a protective search of the areas which come within the suspect's immediate control, even if this action necessitates entry into the suspect's home." Servis, 6 Va. App. at 519, 311 S.E.2d at 162.

Police observed Jackson place what appeared to be a shotgun shell inside the apartment. The area was still within Jackson's reach, and was within reach of the woman who had yet to be identified. A weapon there could have been a danger to the officers or the occupant of the apartment. This danger presented exigent circumstances justifying the crossing of the threshold. See Verez v. Commonwealth, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985), cert. denied, 479 U.S. 813 (1986); Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659,

663 (1990). In the course of conducting a lawful protective search of the area within the immediate control of the suspect and the unidentified woman, Officer Hubbard saw a crack pipe in plain view. The officer was entitled to seize the contraband.

## IV. CONCLUSION

The Terry stop was proper upon corroboration of the tip and upon observation of Jackson's furtive behavior. Concern for safety was further heightened by Jackson's placement of what appeared to be a shotgun shell inside the threshold of the apartment. The presence of an additional unidentified person added to the officer's concern for his safety and the safety of others and justified a pat-down search and a protective search of the immediate area within Jackson's control and within the unidentified woman's control. Officer Hubbard was properly in a location where contraband was in plain view and properly seized the items. The trial judge did not err in denying the motion to suppress the evidence. The convictions are affirmed.

Affirmed.