COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Willis and
          Senior Judge Overton
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.   Record No. 1756-00-1       JUDGE JERE M. H. WILLIS, JR.
                                       DECEMBER 5, 2000
DAVID RAY WILLIAMS


         FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Robert W. Curran, Judge

              Marla Graff Decker, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellant.

              James A. Segall (Krinick, Segall, Moody &
              Lewis, on brief), for appellee.


     The Commonwealth contends that the trial court erroneously

suppressed the heroin discovered when Williams was stopped for

investigation.  We reverse the trial court's suppression order

and remand the case for further proceedings consistent with this

opinion.

                         I.   BACKGROUND

     In reviewing a trial court's ruling on a suppression

motion, we consider the evidence in the light most favorable to

the party prevailing below, in this case Williams.  See

Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

47, 48 (1991).  We will not disturb the trial court's ruling unless it is plainly wrong or without evidence to support it. See Freeman v. Commonwealth, 20 Va. App. 658, 660, 460 S.E.2d 261, 262 (1995).  The burden is upon the Commonwealth to show that the trial court's decision was erroneous.  See id.

So viewed, the evidence established that on December 6, 1999, Detective James Wilson and Detective St. Pierre of the Newport News Police Department were patrolling the area of Chestnut Avenue and 23rd Street looking for "wanted" suspects. This is a high crime area, known for frequent illegal drug transactions.  The officers were in an unmarked police car and were dressed in street clothes.

As the police car proceeded west on 23rd Street, a narrow one-way street, and approached the intersection with Chestnut Avenue, Detective Wilson saw Williams "coming from the corner, up towards [the officer's] direction," heading east.  The sidewalk was elevated about six inches above the street. Williams had been "talking to people on the corner."  He left the corner heading in the direction of the officers.

Detective Wilson was driving slowly.  As Williams passed the police car, he was "smiling."  He had his "hands out" in a manner demonstrated to the court by Detective Wilson and was "looking down at an object in his hands."  Detective Wilson saw in Williams' hands "a small, white square . . . like waxed paper or something."  The paper was closed with a "pharmaceutical

-

fold" used frequently "to put heroin in."  Detective Wilson had worked in the narcotics unit for over three years and had made about one hundred arrests for heroin-related offenses.

Detective Wilson was asked, "you saw [the man] with what you believed to be [, or] suspected [to be] what?"  The detective responded, "Heroin.  The package looked like a package of heroin."

Detective Wilson testified that, as Williams passed by the unmarked police car, he trotted over to a parked sport utility vehicle.  The detective described the "trot" as something between walking and running.

Once Williams entered the driver's side of the vehicle, Detective Wilson backed his car up approximately "ten, twelve feet," and blocked Williams' vehicle.  He then identified himself as a police officer.  After doing so, he saw Williams "reach down to his right side."  Not knowing what this move signified, Detective Wilson drew his firearm and ordered Williams out of his vehicle.  When Williams exited his vehicle, Detective Wilson saw "a folded piece of wax type paper with a spider emblem on it, sitting on the seat right where [Williams] . . . reach[ed]."

Detective Wilson testified that the package on the vehicle seat "was like a wax type paper folded in [a] pharmaceutical fold," which is a special fold made in paper so that items inside will not fall out.  He described the package as similar

-

to those containing "Goodies powder," except a "little bit smaller."  The package bore a spider web design, which Detective Wilson had not seen before, but which he had been informed was being seen on packages of heroin being distributed in the area. Based on these observations and believing the package contained heroin, Detective Wilson arrested Williams for possession of heroin.

At the conclusion of the suppression hearing, the trial court granted Williams' motion.  It ruled as follows:

> [B]ased on this evidence that I have seen, I do not believe that there was sufficient information for the officer to make the arrest. . . . He sees the person under the circumstances here.  That is why I wasn't worried about the gun issue because I didn't think there is any question that he stopped the person and didn't go up and ask him some questions.  I think this was a different type of arrest.  So I am going to grant this defendant's motion with regard to [the heroin].

Pursuant to Code § 19.2-398(2), the Commonwealth appealed the trial court's ruling.

## II.  ANALYSIS

In arriving at its decision to suppress the heroin, the trial court made two erroneous holdings of law and one erroneous finding of fact.

1.  The trial court held:

> It cannot be reasonably inferred from the mere presence of the defendant at the street intersection, and the street's reputation as a place for trafficking drugs, that the

-

> defendant was engaged in the illegal
> activity of drug distribution over a period
> of time the defendant was observed by
> detectives.

While it is true that mere presence alone in a high crime area does not give rise to probable cause or to reasonable suspicion of criminal activity supporting an investigative stop, "'presence in a high crime area' is a factor which may be considered in determining whether an investigatory stop is appropriate." Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 126 (1998) (en banc) (citing Brown v. Commonwealth, 15 Va. App. 232, 234 n.1, 421 S.E.2d 911, 912 n.1 (1992)).

2.  The trial court considered the evidence in the context of its sufficiency to support an arrest.  Williams was not arrested until after he had been removed from his vehicle and Detective Wilson had seen the package bearing the spider emblem; thus, giving him probable cause to believe the package contained heroin.  At issue with respect to the suppression motion was the evidentiary context at the time Detective Wilson approached Williams and required him to exit his vehicle.  At this point, Detective Wilson did not effect an arrest, but merely detained Williams for investigation.  This required only that he entertain a reasonable suspicion based on articulable facts that Williams was engaged in criminal activity.  See Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993).

-

3.    In considering a trial court's ruling on a motion to suppress, we review de novo the ultimate questions of reasonable suspicion and probable cause.  See Ornelas v. United States, 517 U.S. 690, 699 (1996).  However, we "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Id.

Considering the package in question, the trial court held, "I don't think anybody could see this as clearly as you would have to before you could come out and make an arrest."  Nothing in the evidence or in the character of the packet itself supports the foregoing conclusion as a finding of fact.  Indeed, the conclusion is contrary to the detailed and uncontradicted evidence.

Detective Wilson described in detail the package that he saw in Williams' hands.  He described its color and the material of which it was made.  He described the peculiar "pharmaceutical fold" into which it was formed.  He described the purpose of that fold and the meaning of such a package to him in the context of his experience as a police officer experienced in illegal drug trafficking.  His assertion that he saw the package and his description of it were unchallenged.  There can be no question that he saw what he described.

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal

-

activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures."  McGee v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (en banc) (citation omitted).  Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity."  Ornelas, 517 U.S. at 696 (citation omitted).

Detective Wilson articulated abundantly the facts upon which his suspicion was premised.  The reasonableness of his suspicion must be judged in the context of his experience as a police officer.  See Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 270-71 (1989).  Within the context of his experience, his suspicion that Williams possessed heroin was well founded upon the facts that he articulated and was thus reasonable.

Detective Wilson's stop of Williams for investigation was lawful.  His removal of Williams from his vehicle for reasons of personal safety was a reasonable and proper adjunct of that investigation.  The heroin package, with its peculiar spider emblem, was then in plain view, providing probable cause that Williams possessed heroin, supporting its seizure and his arrest.  Therefore, the heroin should not have been suppressed.

The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.