COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


METKEL ALANA, A/K/A
  KENNETH FOSTER
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1602-05-4          JUDGE ROSEMARIE ANNUNZIATA
                                                      JANUARY 16, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

Christopher R. K. Leibig (John Kenneth Zwerling; Zwerling,
Leibig & Moseley, P.C., on brief), for appellant.

Karen Misbach, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Upon entry of a conditional guilty plea, Metkel Alana was convicted of first-degree

murder, two firearms violations, grand larceny, and robbery.  He contends the trial court erred by

(I) finding his initial encounter with the police was consensual or, in the alternative, finding the

initial encounter and detention were supported by reasonable suspicion, (II) finding the police

officer's search of his book bag was reasonable, (III) finding the firearm and other evidence were

admissible under the doctrine of inevitable discovery, (IV) refusing to order the Commonwealth

to disclose the police report pertaining to the alleged pat down and search of the book bag or to

review the report *in camera* for the existence of exculpatory evidence, and (V) denying his

motion to conduct an in-court experiment to determine what police could feel in the book bag.

For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence established that Musharef Shah was robbed and shot while sitting in his car on North Fayette Street in Alexandria at 10:00 p.m. on September 16, 2004. Shah later died at the hospital.

At 10:01 p.m., a call came into the 911 center, reporting a shooting at 214 North Fayette Street, and police officers were dispatched to the scene at 10:02 p.m. Officer James DeLotch heard over his police radio that the suspect was a black man with a beard. At the scene, DeLotch also learned from the officers there that the suspect was driving a black Honda Accord with a spoiler. Subsequent reports indicated that two black males were in the vehicle described, tentatively, as a black Honda.

Shortly after Shah was shot, Susan Oswald was robbed at gunpoint at her nearby home on South Lee Street in Alexandria. DeLotch, hearing about the robbery through a police dispatch report as he circled the area in his police vehicle, went to this second crime scene and spoke to the victim. Based on her report, he radioed a description of the suspect, to wit: a black male, probably 180-190 pounds, wearing blue jeans and a "like colored" shirt,[1] with facial hair, and armed with a handgun that appeared to be silver in color. DeLotch began circling the area again and heard another police dispatch report relating a police pursuit of a vehicle believed to be involved in the shooting in Alexandria and that was eluding them. Thereafter, the police located the vehicle, a dark blue Subaru with a spoiler, abandoned. DeLotch noted that the sites of the

_____

[1] Later, during cross-examination, the transcript indicates that DeLotch said the suspect was wearing a "light colored" shirt as opposed to a "like colored" shirt. The evidence proved Alana was wearing a white tank top underneath his black shirt.

shooting, robbery, and abandoned vehicle were in close proximity in the Old Town section of Alexandria. He began circling the area again.

Meanwhile, Officer Todd Branson, off duty and in Old Town with a friend, noticed two black males, one of whom was Alana, walking "at a very fast pace." They appeared to be together but keeping a distance between them of ten to fifteen feet. They appeared nervous and suspicious, turning their heads to look around and behind them. Branson called the Alexandria Police Communications Section to see "what, if anything, they were working" in that area. Branson learned that there had been a shooting, a robbery, and vehicle pursuit with a bailout and that two black males were involved. Branson again observed the men and noticed they were walking even faster than when he had first noticed them. Branson got out of his vehicle and followed the men on foot.

DeLotch responded to Branson's request for assistance. Branson described one of the men as taller, with darker skin and a beard, and wearing blue jeans and a black shirt. The second man was described as wearing a light-colored shirt and blue jeans. DeLotch drove north and saw the two men "walking at a rapid pace" and observed that they "kept looking back." The man with the beard was carrying a black book bag. Because the two men matched the description of the suspects involved in the shooting and the armed robbery, DeLotch decided to talk to them and determine their identities. DeLotch pulled his vehicle to the side of the road and got out. He did not activate his lights or siren, and he did not draw his gun or run towards the men. Rather, when he approached the two, he asked, "Can I talk to you guys for a second?" DeLotch continued, "Do you have any ID on you?" Both men said they had none. Alana, however, said, "I have this," and handed DeLotch a birth certificate in the name of "Kenneth Foster." DeLotch had never been given a birth certificate as identification and became suspicious. DeLotch told the two men that he was investigating "some things that's been going on" and asked "[i]f they

didn't mind" sitting on the curb while he finished investigating some things. Consistent with his normal procedure, DeLotch planned to call dispatch and provide the name and birthdate of the individual he had identified for a warrant check and a physical description, if any was available.

However, the taller man with the beard, Alana, stepped back and "took off running." DeLotch chased him. Alana removed the book bag from his back as he was running and began pulling out notebooks "like he was trying to dig for something." "[P]apers were just flying" as he fled. Officers Branson and Taylor stopped Alana. After a "scuffle," DeLotch handcuffed him as he lay on the ground with the book bag nearby. In light of the shooting and the use of a gun during the robbery, DeLotch suspected Alana was armed and dangerous. In addition, Alana matched the description of the suspect; specifically, he was: a black man with a beard, wearing a dark-colored or black shirt and was in the area where the crimes had occurred minutes earlier.

After handcuffing Alana, DeLotch patted him down to make sure he was not armed and picked up Alana's book bag, located about one foot away. Knowing Alana had thrown the notebooks from his book bag while he fled, DeLotch thought the book bag felt "more weighted than it should be to be an empty bag." DeLotch put his hand underneath the book bag and "felt a hard object that was in the bottom of the bag. It felt like a gun." DeLotch opened the book bag and found a silver handgun underneath a black tee shirt. Shortly thereafter, the police arrested Alana and searched him.

After the search, DeLotch noticed that Alana's fists were balled up tightly. Thinking Alana's handcuffs were too tight, DeLotch offered to adjust them if Alana would unball his fists. When Alana opened his left hand, a diamond ring and necklace that belonged to the robbery victim were found there.

<u>Analysis</u>

Issues I, II and III

In reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the Commonwealth, the prevailing party below, and grant it all reasonable inferences deducible therefrom. <u>Greene v. Commonwealth</u>, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994). It is appellant's burden on appeal to show that the denial of the motion to suppress constituted reversible error. <u>Motley v. Commonwealth</u>, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993). We review determinations of reasonable suspicion and probable cause *de novo* on appeal. <u>See</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996); <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." <u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261.

"[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." <u>Hayes v. Florida</u>, 470 U.S. 811, 816 (1985). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1972).

To establish reasonable suspicion, the officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch.'" <u>McGee</u>, 25 Va. App. at 202, 487 S.E.2d at 263 (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968)). In deciding whether to make an

investigatory stop, an officer is entitled to rely on the totality of the circumstances and is entitled to view the circumstances confronting him in light of his training and experience and may consider any suspicious conduct by the suspicious individual. Alston v. Commonwealth, 40 Va. App. 728, 739, 581 S.E.2d 245, 250-51 (2003). "[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer." Id. (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)).

Applying these principles to the present case, we conclude that Officer DeLotch had reasonable, articulable suspicion and acted reasonably in stopping Alana. DeLotch knew that a shooting and an armed robbery had occurred in the area and that the description of the suspect in each crime was similar. DeLotch also knew that the police were pursuing a vehicle believed to be at the site of the shooting and from which the vehicle's occupants had "bailed out." He knew that Officer Branson had spotted two men acting suspiciously as they walked down an Old Town Alexandria street in the area of the reported incidents, that Branson spotted the two men near the location of the "bail-out," and that one of the men matched the description of the suspect involved in the shooting and armed robbery. Specifically, Alana matched the description of the suspect involved in the shooting and armed robbery, he was in close proximity to where the crimes occurred shortly after the crimes occurred, and he was close to the location of the vehicle bail-out, acting suspiciously. On these facts, we hold that DeLotch had reasonable suspicion to stop Alana and detain him briefly while attempting to identify him and obtain additional information. Because we hold that Alana's stop was supported by reasonable suspicion, we need not address whether the initial encounter was consensual. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (an appellate court decides case on the best and most narrow ground available).

In addition, DeLotch's search of Alana's book bag was reasonable. After DeLotch stopped him, Alana fled the scene. Flight, although not indicative of wrongdoing, is suggestive of guilt, and constituted an additional circumstance for DeLotch to consider in determining whether to further investigate suspected criminal activity. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000). "[I]t is well established that police officers who are conducting a lawful investigatory stop are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" Alston, 40 Va. App. at 742, 581 S.E.2d at 252 (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). If, during the course of a valid stop, the officer has a reasonable suspicion that the person may be armed and dangerous, he may pat down the suspect for weapons. Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993). If during the pat down, the officer feels an object that he reasonably believes could be a dangerous weapon, the officer may seize the object from the person. Id.

DeLotch was investigating a shooting and an armed robbery, two crimes involving the use of a firearm. Alana matched the description of the suspect in both crimes. DeLotch had seen Alana remove the book bag from his back and "dig" through it as he ran from the scene and had seen notebooks and papers "flying" out of the book bag as Alana searched for something in the bag. DeLotch reasonably believed Alana was armed and dangerous. After handcuffing appellant, DeLotch understandably frisked him for weapons. DeLotch picked up the book bag, located only one foot away from appellant, and concluded it weighed more than could be expected after its contents had been removed. DeLotch lifted the bag and felt a hard object in the bottom of the bag. "It felt like a gun," he said. DeLotch reasonably believed, based on these specific and articulable facts, that appellant's book bag contained a dangerous weapon. "It would defeat the purpose of a protective pat-down search to require a police officer, who seizes a

- 7 -

closed container during a pat-down search on the reasonable suspicion that it contained a weapon, to return the container unexamined simply because it is neither a weapon nor evidence of a crime." Id. at 31, 434 S.E.2d at 921. Police officers should not risk being shot in the back by returning containers they suspect contain a dangerous weapon but do not have probable cause to seize. Id. Accordingly, we conclude that DeLotch properly opened appellant's book bag and removed the object, a silver handgun.

Because we hold that appellant's Fourth Amendment rights were not violated, we need not address Alana's claim that the trial court erred by finding that, even if his rights were violated, the evidence would have been admissible under the inevitable discovery doctrine.

Issue IV

"A defendant does not have a general constitutional right to discovery in a criminal case." Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996). The Commonwealth, however, is required to provide a defendant exculpatory evidence, including evidence that impeaches a prosecution witness' credibility. Id. (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). In order to establish a Brady violation, the defendant must show that the undisclosed evidence was exculpatory and material to either guilt or punishment. Id. "The mere possibility that 'undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" Id. (quoting United States v. Agurs, 427 U.S. 97, 109-10 (1976)). "Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d 110, 112 (1994). "A prosecutor's suppression of impeachment evidence creates a due process violation only if the suppression deprives the defendant of a fair trial under the Brady standard of materiality." Lovitt v. Warden, 266 Va. 216, 245, 585 S.E.2d 801, 818 (2003).

Alana contends the police report would be exculpatory if DeLotch did not record the fact in the report that he felt the gun in Alana's book bag before searching it. On that ground, Alana contends the Commonwealth should have provided the report to him. The issue Alana raises need not be addressed. DeLotch testified that he did not recall including in his report the fact that he felt the gun before searching appellant's book bag. The trial judge, sitting as fact finder, said he assumed DeLotch did not include the information in his police report. Thus, Alana could and did use this evidence which he contends was exculpatory to try to impeach DeLotch's credibility. On this record, we conclude there is no reasonable probability that the outcome of the proceeding would have been different had the report been disclosed to the defense.

Alana contends the trial court should have conducted an *in camera* review for other possible inconsistencies. We disagree. Whether a trial court should conduct an *in camera* review of the police report is a matter of the trial court's discretion. See Bowman, 248 Va. at 135, 445 S.E.2d at 113. Alana failed to show that the police report was exculpatory and material; the "mere possibility" that the police report could have helped his case does not establish "materiality." Therefore, we hold the trial court did not abuse its discretion by refusing to conduct an *in camera* review of the police report for "hypothetical" inconsistencies.

Issue V

Whether to permit experiments to be performed in the courtroom "is a matter peculiarly within the discretion of the trial judge," and "this discretion will not be interfered with unless it is apparent that it has been abused." Ferrell v. Commonwealth, 177 Va. 861, 870, 14 S.E.2d 293, 296 (1941). "The results of experiments are not admissible in evidence unless the tests were made under conditions which were the same or substantially similar in essential particulars to those existing at the time" of the event being recreated. Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 959, 252 S.E.2d 358, 365 (1979).

In this case, Alana wanted the trial judge to feel the book bag and determine whether he could feel the gun's presence as DeLotch had done. In denying Alana's motion, the trial judge noted that there was no evidence establishing how the gun was positioned at the time of the search, further stating that, if the gun was "barrel down" or "handle down," he may be able to tell it was a gun, but that if it was "laying flat" he may not. The trial judge also commented that, whether he could identify the item in the book bag as a gun was not relevant to whether a trained officer could do so. The record does not establish the requisite conditions to validate the experiment Alana sought to conduct. Therefore, we hold that the trial judge did not abuse his discretion by refusing to participate in Alana's courtroom experiment.

For these reasons, we affirm Alana's convictions.

<u>Affirmed.</u>