COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Willis
Argued at Chesapeake, Virginia


ANTONIO LEWIS GOODMAN
                                               MEMORANDUM OPINION[*] BY
v.       Record No. 1971-06-1                  JUDGE LARRY G. ELDER
                                               OCTOBER 16, 2007
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                              Mark S. Davis, Judge

               (Joyce L. Weddle, Deputy Public Defender; Office of the Public
               Defender, on brief), for appellant.  Appellant submitting on brief.

               Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
               Attorney General, on brief), for appellee.


        Antonio Lewis Goodman (appellant) appeals from his bench trial conviction for

possessing a firearm after having been convicted of a felony, entered upon his conditional plea of

guilty.  On appeal, he contends the seizure that led to discovery of the firearm was unreasonable

under the Fourth Amendment and that the trial court should have granted his motion to suppress

the firearm and his accompanying statements.  We agree and reverse his conviction.

                                     I.  BACKGROUND

        On the afternoon of February 1, 2006, Portsmouth Detective G.B. Smith received a

telephone call from a confidential informant.  Detective Smith had "been using" this particular

informant for over two years, and with information previously provided by the informant,

Detective Smith had obtained "over two dozen search warrants and made over fifty arrests."

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The informant reported to Detective Smith that he had "personally seen" a particular individual "in the Lincoln Park area trying to sell a large-framed handgun" the individual had in his possession. The informant described the individual as a black male wearing a red-and-black baseball cap, black jacket, black pants, and red-and-black shoes.

Detective Smith knew the police department had officers "doing an operation" in Lincoln Park, described as property of the Portsmouth Redevelopment and Housing Authority and a "high crime, high drug area." Detective Smith kept the informant on the telephone while he attempted to contact Officer B.K. Ingram over the police radio to see if Ingram was still in Lincoln Park. When Detective Smith reached Officer Ingram and confirmed Ingram was, in fact, still in the Lincoln Park area, Detective Smith "had the phone in one hand and the radio in the other, talking to Ingram on the radio and the informant on the telephone." The informant then told Detective Smith that "the subject was leaving in the passenger seat of a gold Infinity." Detective Smith repeated to Officer Ingram all the information the informant had given him, including the description of the individual, the handgun, and the car in which the informant saw him departing. Detective Smith also told Officer Ingram that the individual "possibly had an outstanding warrant."[1]

Within a minute after Officer Ingram received the information that the individual was departing the area as a passenger in a gold Infinity, Officer Ingram observed a gold Infinity

---

[1] Officer Ingram testified that Detective Smith relayed to him this information about the "possibl[e]" outstanding warrant. Detective Smith gave no testimony on this subject, and the record does not indicate whether this information came from the informant or some other source. Because the record contains no indication that Detective Smith knew the name of the individual described by the informant and because all of Detective Smith's information appears to have come from the informant, the reasonable inference is that the informant was also the source of the information about the possible outstanding warrant. Thus, we analyze the case as if the informant was the source of this information. We note, however, that if we treated Detective Smith rather than the informant as the source of the information, we would reach the same result on this record.

traveling in the direction the informant had said it would be. Inside the car, Officer Ingram observed a passenger, appellant, who matched the description received from the informant. Officer Ingram followed the vehicle a short distance, and when it pulled up to the gas pumps at a gas station, Officer Ingram pulled in behind it. Officer Ingram then paused to observe the passenger again to be sure he matched the description of the individual the informant reported as having the handgun.

Officer Ingram approached the passenger side of the stationary vehicle. While appellant was sitting in the car, Officer Ingram went up to the vehicle, drew his weapon, and told appellant to put his hands up. Officer Ingram then opened the door and asked appellant to exit the vehicle, which he did. Officer Ingram placed appellant in handcuffs for "[the officer's] safety because [he] believed [appellant] had a firearm." Officer Ingram then started to "pat [appellant] down" for weapons and asked appellant whether "he had any weapons on him." Appellant "stated yes," and Officer Ingram "recovered a Ruger .357." He later determined that appellant "did have an outstanding warrant."

## II. ANALYSIS

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc); see McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001). However, we review *de novo* the trial court's application of defined legal standards, such as whether the police had

reasonable suspicion or probable cause for a search or seizure. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996). Our review of the existence of probable cause or reasonable suspicion involves application of an objective rather than subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 97-98 (1996); see also Robinson v. Commonwealth, 273 Va. 26, 35-38, 639 S.E.2d 217, 222-24 (2007).

An officer may effect a Terry stop, i.e., a "brief, minimally intrusive investigatory detention[]," Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)), if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it, Terry, 392 U.S. at 30, 88 S. Ct. at 1884, 20 L. Ed. 2d at 911, or that the detainee "'is otherwise subject to seizure for violation of the law,'" Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (quoting Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979)). "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740, 750 (2002). Nevertheless, an "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch."'" Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000) (quoting Terry, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909); see Arvizu, 534 U.S. at 274, 122 S. Ct. at 751, 151 L. Ed. 2d at 750.

An officer who develops such reasonable suspicion concerning a person may stop that person "in order to identify him, to question him briefly, or to detain him briefly, while

- 4 -

attempting to obtain additional information" in order to confirm or dispel his suspicions.  Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705, 711 (1985).  In the course of a valid Terry stop, an officer may draw his weapon and handcuff the detainee without converting the encounter into an arrest.  See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Whether an officer has reasonable suspicion for a Terry stop is based on an assessment of the totality of the circumstances, "which includes 'the content of information possessed by police and its degree of reliability,' i.e., 'quantity and quality.'"  Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990)).  When the factual basis for probable cause or reasonable suspicion is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances analysis.  Illinois v. Gates, 462 U.S. 213, 230, 233, 103 S. Ct. 2317, 2328, 2329, 76 L. Ed. 2d 527, 543, 545 (1983); see White, 496 U.S. at 328-31, 110 S. Ct. at 2415-16, 110 L. Ed. 2d at 308-09.  For example,

> "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." [White, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309]; see also [Gates], 462 U.S. [at 233], [103 S. Ct. at 2329, 76 L. Ed. 2d at 545] ("a deficiency in one[, the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge,'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability").

Jackson, 267 Va. at 673, 594 S.E.2d at 599.  The Virginia Supreme Court has also recently noted that "[t]he converse is likewise true": "'[I]f there are strong indicia of the informant's veracity, there need not necessarily be *any* indicia of the informant's basis of knowledge.'"  Id. (quoting State v. Rutzinski, 623 N.W.2d 516, 522 (Wis. 2001)) (emphasis added).

In the instant case, appellant concedes the informant's reliability. Thus, we presume the accuracy of the informant's information and assess whether the information provided was sufficient to establish reasonable, articulable suspicion for an investigative detention. The informant's information, viewed in the light most favorable to the Commonwealth, provided Officer Ingram with reasonable suspicion to believe appellant was the person the informant had seen trying to sell a handgun he had in his possession. This information failed, however, to give Officer Ingram reasonable, articulable suspicion for a Terry stop and weapons frisk. See, e.g., Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993) (holding weapons frisk permitted only when officer is both (1) rightly in the presence of an individual, as he is during the course of a valid Terry stop of the subject or a companion, and (2) develops reasonable suspicion that the subject may, in fact, be armed and dangerous).

Although the informant's information provided Officer Ingram with reasonable suspicion to believe appellant possessed a firearm, nothing in the record provided reasonable suspicion for the belief that this possession was illegal. "Absent some disqualifying status (being a felon, juvenile, or drug possessor) or situs (being in a place where weapons are forbidden), it is not a crime to possess a weapon." Jackson v. Commonwealth, 41 Va. App. 211, 231, 583 S.E.2d 780, 790 (2003) (en banc), rev'd on other grounds, 267 Va. 666, 594 S.E.2d 595 (2004). Further, nothing in the record indicated appellant was carrying the firearm in a legally proscribed manner, such as in a concealed fashion without a permit. See Code § 18.2-308. The Commonwealth also concedes that appellant's attempts to sell the handgun were not illegal[2] and, thus, that information about his sales efforts, standing alone, was insufficient to justify a Terry stop.

---

[2] Under Virginia law, it is unlawful for persons under specified disabilities to purchase or possess a firearm. See, e.g., Code § 18.2-308.1:1 (insane person); § 18.2-308.1:2 (person legally incompetent or mentally incapacitated); § 18.2-308.1:4 (person subject to protective order); § 18.2-308.1:5 (person convicted of certain misdemeanor drug offenses); § 18.2-308.2 (convicted felon); § 18.2-308.7 (juvenile). It is also unlawful to knowingly sell a firearm, or to

The Commonwealth contends, however, that the totality of the circumstances justified the stop and that, "since the informant was right about the car, location, and [appellant's] physical attributes, it was not unreasonable for Officer Ingram to assume [the informant] was likely right about the firearm and the outstanding warrant as well." The flaw in this argument is that the informant reported merely that appellant "*possibly* had an outstanding warrant" and provided no explanation of the basis for that belief. (Emphasis added). For the reasons already discussed, knowledge that appellant possessed a handgun and was trying to sell it in a high-crime, high-drug area contributed nothing to the reasonable, articulable suspicion required for a Terry stop. Addition of the information that appellant "*possibly* had an outstanding warrant" was similarly insufficient to provide the officer with reasonable, articulable suspicion. Compare Washington v. Commonwealth, 29 Va. App. 5, 11-13, 509 S.E.2d 512, 515-16 (1999) (en banc) (upholding stop where police received anonymous tip that warrant for particular individual, Ford, was outstanding and that he was at specific location; *police confirmed existence of warrant for Ford*; and police detained person who exited rear of residence, in response to police knocking at

---

possess a firearm with the intent to sell it, to anyone prohibited from possessing it pursuant to some of these disabilities. See Code § 18.2-308.2:1. However, the only sellers required to obtain background information or conduct records checks to determine the status of a particular buyer are those sellers classified as dealers licensed "pursuant to 18 U.S.C. § 921 et seq." Code § 18.2-308.2:2(B), (G); see 18 U.S.C. § 921(a)(11), (21) (defining "'dealer'" as, *inter alia*, "any person engaged in the business of selling firearms at wholesale or retail" and defining "'engaged in the business'" as including person regularly selling "with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms" but excluding person "who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms"). Neither state nor federal law requires that an individual seeking to sell a handgun be licensed as a dealer.

Virginia law permits certain localities to require sellers of pistols and revolvers to report the name and address of the buyer within ten days *after* the transfer. See Code § 15.2-1207. It specifically prohibits localities from adopting or enforcing any ordinance "governing the purchase, possession, transfer, [or] ownership . . . of firearms . . . other than those expressly authorized by statute." Code § 15.2-915.

Thus, nothing about the informant's tip that appellant was trying to sell a handgun in a high-crime, high-drug area gave Officer Ingram reasonable suspicion to believe that appellant's actions or intent violated any law or ordinance.

front, in order to check identification). The reliability of the informant's other prior information, about both this individual and others, did nothing to compensate for the degree of his uncertainty about the existence of an outstanding warrant for appellant's arrest or the lack of an articulated basis for his belief in that "possibility." See Florida v. J.L., 529 U.S. 266, 272, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254, 261 (2000) (in context of anonymous tip that person of particular description was carrying firearm, discussing distinction between "reliability as to identification" and "reliability as to the likelihood of criminal activity" (citing 4 Wayne R. LaFave, Search and Seizure § 9.4(h), at 213 (3d ed. 1996))).

Although reasonable suspicion "need not rule out the *possibility* of *innocent* conduct," Arvizu, 534 U.S. at 277, 122 S. Ct. at 753, 151 L. Ed. 2d at 753 (emphases added), more than a mere speculative *possibility* of *criminal* conduct is required to establish an *articulated* basis for an investigative detention. The Supreme Court reached just such a conclusion in Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001), a unanimous decision involving a detention based on a suspicion that Harris was trespassing. Police received an anonymous tip that a person named Mart Harris and matching a particular description was selling drugs on an identified corner in a public housing development and was armed. Id. at 410, 551 S.E.2d at 607. The officers saw no behavior indicative of drug activity and no bulge that might indicate a weapon, observing only that Harris, who fit the description in the tip, was standing on the afternoon in question with two others near a bench that formerly had been used as a bus stop and that "[a] short distance away . . . was a 'no trespassing' sign posted on one of the buildings of the housing development." Id.

The Court of Appeals held the anonymous tip and corroboration of only innocent details was insufficient to support Harris's detention. Id. at 414, 551 S.E.2d at 609. The Commonwealth did not challenge that holding on appeal, and the Supreme Court considered

only whether the officers' observations once they began surveilling Harris provided them with reasonable suspicion to believe Harris was trespassing, a crime not mentioned by the anonymous tipster. Id. at 414, 551 S.E.2d at 609-10. One of the officers testified he had worked for two-and-a-half years in a drug elimination program in the housing development, was familiar with most of the residents and their regular visitors, and "had never before seen" Harris or his companions. Id. at 410, 551 S.E.2d at 607. As a result of this information, the officer testified "he formed the opinion that the three men were *possibly* trespassing," and he approached Harris, who was wearing a loose fitting jacket, and immediately frisked him. Id. at 410-11, 551 S.E.2d at 607 (emphasis added). After finding a concealed handgun in the frisk, the officer questioned the man and learned that neither he nor his companions were residents of the housing development. Id. at 411, 551 S.E.2d at 607. The officer then arrested Harris for trespassing and possession of a concealed weapon and found marijuana in a search of Harris incident to arrest. Id.

The Supreme Court held that the officer's participation in the housing development's drug elimination program and his testimony that he did not recognize Harris or his companions, who were "standing and conversing near a former and, by appearance, possibly still functioning bus stop adjoining a public street . . . at midday," provided "no more than an 'unparticularized suspicion or "hunch"' that criminal activity was afoot." Id. at 416, 551 S.E.2d at 610-11 (quoting Terry, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909). In short, the officer's belief "that the three men were *possibly* trespassing," a belief based on reasons the officer articulated in the record, was insufficient to justify an investigative detention. Id. at 410, 415-17, 551 S.E.2d at 607, 610-11 (emphasis added).

If a police officer's *articulated* belief that an individual is "possibly" engaging in the crime of trespass is insufficient to provide reasonable suspicion for an investigative detention, so,

too, is a reliable informant's belief, for reasons *not* articulated in the record, that an individual is "possibly" wanted on an outstanding warrant. Thus, in appellant's case, Officer Ingram's information amounted to no more than a hunch—not rising to the level of reasonable, articulable suspicion—that a warrant for appellant's arrest was outstanding. The reliable informant's certainty that appellant possessed a firearm did nothing to compensate for his lack of certainty regarding the existence of an outstanding warrant.

> [T]he Commonwealth [may not] bootstrap[] the legitimate concern for law enforcement officers' safety, which permits a protective search of a legitimately detained suspect, to serve as the basis for detaining the suspect. . . . [T]he issue before this Court is not whether [the officer] could, based on the information in the tip that [the suspect] was armed, conduct the protective patdown had [the suspect] been otherwise lawfully detained, but whether [the officer] had a reasonable, articulable suspicion to warrant detaining [the suspect] in the first place.

Id. at 416, 551 S.E.2d at 611.

Absent reasonable, articulable suspicion for a detention, Officer Ingram's only immediate basis upon which to approach appellant was to attempt to engage him in a consensual encounter in the hope of gaining additional information that might provide the requisite reasonable, articulable suspicion for a detention or probable cause for an arrest. If Officer Ingram felt attempting a consensual encounter was too dangerous under the circumstances, based on his knowledge that appellant likely was armed, he could have avoided appellant altogether, waited until additional officers had arrived, or conducted additional investigation in a way not involving direct contact with appellant in an effort to obtain more definitive information regarding the existence of an outstanding warrant.

III.

Because Officer Ingram lacked reasonable, articulable suspicion to detain appellant, we hold the trial court erred in denying appellant's motion to suppress the firearm and accompanying statements.  Thus, we reverse appellant's conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>