NORMAN MILTON BOWMAN, JR.

V.

COMMONWEALTH OF VIRGINIA

Record No. 931328

June 10, 1994

Present: All the Justices

132

*Christopher P. Shema (Shema & Shema*, on briefs), for appellant.
*Robert B. Condon, Assistant Attorney General (James S. Gilmore, III, Attorney General*, on brief), for appellee

JUSTICE LACY delivered the opinion of the Court.

On March 9, 1990, while working undercover, Officer Derek Young of the City of Norfolk Police Department purchased cocaine from a man he previously had seen on approximately 12 occasions. On April 11, 1990, Young identified Norman Milton Bowman, Jr. from a photographic lineup as the individual who had sold him the cocaine. At the time of the drug transaction, Bowman was approximately six feet two inches tall and weighed 194 pounds.

At the trial in the Circuit Court of the City of Norfolk, the Commonwealth asked Young to describe Bowman's appearance at the time of the offense. Based on a report he had filed following the drug purchase, Young stated, "I described Mr. Bowman being approximately five-foot-eight, 150 pounds, black hair, brown eyes." Bowman's counsel argued that the apparent discrepancy between Bowman's actual height and weight and Young's direct testimony based on his report affected Young's credibility and was exculpatory evidence. After the trial court denied Bowman's motion to dismiss based on the prosecution's failure to disclose this evidence, Bowman sought access to the report to determine whether it contained additional exculpatory material.

The trial court refused to require production of Young's report, but allowed Bowman's counsel to cross-examine Young regarding the apparent discrepancy. The trial court also denied Bowman's requests that it review the report *in camera* and that it place the report under seal in the record for appeal. Following a bench trial, Bowman was found guilty of distributing cocaine, in violation of Code § 18.2-248, and was sentenced to seven years in prison.

Bowman challenged his conviction, arguing that the trial court committed reversible error by refusing to order the Commonwealth to produce the report, by refusing to review that report *in camera*, and by failing to make the report a part of the appellate record. The Court of Appeals affirmed the conviction in an unpublished opinion. We granted Bowman an appeal, and he raises the same issues here.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Whether evidence is material and exculpatory and, therefore, subject to disclosure under *Brady* is a decision left to the prosecution. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Inherent in making this decision is the possibility that the prosecution will mischaracterize evidence, albeit in good faith, and withhold material exculpatory evidence which the defendant is entitled to have under the dictates of *Brady*. If the defendant does not receive such evidence, or if the defendant learns of the evidence at a point in the proceedings when he cannot effectively use it, his due process rights as enunciated in *Brady* are violated. *United States v. Russell*, 971 F.2d 1098 (4th Cir. 1992); *United States v. Shifflett*, 798 F.Supp. 354 (1992); *Read v. Virginia State Bar*, 233 Va. 560, 564-65, 357 S.E.2d 544, 546-47 (1987).

In this case, Bowman filed a pre-trial motion for discovery pursuant to Rule 3A:11, requesting, *inter alia*, production of any exculpatory evidence discoverable under *Brady* and under *Stover v. Commonwealth*, 211 Va. 789, 180 S.E.2d 504 (1971), *cert. denied*, 412 U.S. 953 (1973). Despite this request, the Commonwealth did not provide Bowman with Young's report, presumably because the prosecution determined that the report did not contain material exculpatory evidence.

Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. A "reasonable probability" is one which is sufficient to undermine confidence in the outcome of the proceeding. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Robinson v. Commonwealth*, 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986). Bowman argues that the discrepancy between Bowman's actual height and weight and Young's estimation of those measurements contained in his report was material exculpatory evidence for two reasons. First, it directly called Young's credibility into question. *Bagley*, 473 U.S. at 677; *Stover*, 211 Va. at 795, 180 S.E.2d at 509. Second, it supported Bowman's defense of misidentification and he contends that the lack of this information adversely affected development of this defense for trial.

■ Our role in assessing whether the availability of this information would have produced a different result is difficult. We must look at the totality of the circumstances with an awareness of the "difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response" to the pre-trial request for *Brady* information. *Bagley*, 473 U.S. at 683.

■ Bowman did learn of the height and weight discrepancies during the trial and was allowed to cross-examine Young on that issue. We cannot conclude that the failure to disclose this information earlier prevented Bowman from effectively using the information for purposes of challenging Young's credibility. However, we reach a different conclusion in considering the effect of non-disclosure on Bowman's defense of mistaken identity.

Bowman's position at trial, and here, is that Young made a mistake when he identified Bowman as the cocaine seller. He points out that the cocaine purchase occurred late at night, 11:45 p.m., and that Young was in Bowman's presence for only five to six minutes during the purchase. Finally, the photographic identification of Bowman was made over 30 days after the cocaine purchase. These circumstances may suggest the possibility of a mistaken identity; however, Bowman argues that other factors, unknown to him, which, if known, could have led him to take further actions to develop this defense. The first of these factors is, of course, the size discrepancy. Additionally, Bowman has a two-inch long vertical scar and a three-quarters of an inch long horizontal scar on his forehead. Young testified that these scars were not listed in his report as distinguishing characteristics. This omission, along with the size discrepancy, Bowman asserts, further supports the possibility of mistaken identity. With such additional potential support for the mistaken identity defense, Bowman's counsel indicated at trial that he would have undertaken such actions as subpoenaing at least some of the persons in the pictorial lineup to determine their height, weight, and the amount of time they spent in the area where the cocaine was purchased.

■ Considering the totality of the circumstances, we conclude that, had Bowman been aware of the discrepancy between Young's report and Bowman's actual size, and Young's failure to mention Bowman's facial scars as identifying features in the report, Bowman reasonably may have taken different and poten-

tially significant actions which could have strengthened Bowman's defense. As in *Bagley*, when Bowman's counsel did not receive Young's report or any part of it in response to his pre-trial request for *Brady* material, it was reasonable for defense counsel to assume that no such evidence existed and "to make pretrial and trial decisions on the basis of this assumption." *Bagley*, 473 U.S. at 682-83. Under these circumstances, there is a reasonable probability that the outcome of the trial would have been different, had the prosecution provided this evidence to the defense prior to trial. Therefore, we conclude that the prosecution denied Bowman his due process rights in violation of *Brady*. Accordingly, we will reverse the decision of the Court of Appeals and remand the case for a new trial.

On remand, Bowman may again seek production of Young's report. Since the Commonwealth may continue to refuse to produce the report, we will address Young's other contentions, *i.e.*, that the trial court should have reviewed the report *in camera* to determine whether it contained additional exculpatory evidence and should have made the report part of the appellate record.

Bowman sought the report because he suspected that it might contain additional discrepancies or other exculpatory evidence which he could use in his mistaken identity defense. The prosecution maintained that the information in the report contained no exculpatory evidence. Bowman sought the trial court's intervention to resolve this impasse by reviewing the report *in camera* and by determining whether it contained any further potentially exculpatory material.

■ In situations such as the one presented here, where the prosecution and defense are at an impasse in their respective views of the nature of the evidentiary materials, other courts have sanctioned an *in camera* review of the disputed *Brady* material to resolve the impasse. *Ritchie*, 480 U.S. at 60; *United States v. Agurs*, 427 U.S. 97, 106 (1976); *United States v. Buford*, 889 F.2d 1406, 1408 (5th Cir. 1989); *United States v. Alexander*, 748 F.2d 185, 193 (4th Cir. 1984), *cert. denied*, 472 U.S. 1027 (1985); *State v. Hardy*, 235 S.E.2d 828, 842 (N.C. 1977); *Roach v. Commonwealth*, 507 S.W.2d 154, 155 (Ky. 1974).

■ The trial court's determination of the question whether it should undertake the review of the disputed material is a discretionary matter. Whether that discretion was properly exercised will depend on the specific factors of each case, such as the rea-

sons given by the defense in justifying access to the disputed material, the time of the request, or the amount of material involved. *Agurs*, 427 U.S. at 106; *Hardy*, 235 S.E.2d at 841-42; Daniel J. Capra, *Access to Exculpatory Evidence: Avoiding the Agurs Problems of Prosecutorial Discretion and Retrospective Review*, 53 Fordham L. Review 391 (1984).

In this case, the discrepancies already discovered from Young's testimony provided a legitimate basis for Bowman's belief that the report might contain additional material exculpatory evidence. The trial court was not asked to undertake a burdensome review of unlimited amounts of material, but only to review a single report which was apparently short in length. Finally, the review was the only viable method of resolving the issue in this case. Similar factors have been cited as requiring an *in camera* review by the trial court in other cases. *See, e.g., Alexander*, 748 F.2d at 193. Likewise, we conclude that the circumstances here supported such a review and that the trial court abused its discretion in refusing to review the report as requested by Bowman.

We, of course, could conduct the review of the report and resolve the matter here, if the report were part of the appellate record. We cannot make this determination because the trial court refused Bowman's request to make Young's report part of the appellate record. Bowman has assigned that refusal as error and we agree.* Therefore, on remand, the trial court will have to review the report, and, if it finds that the report contains additional evidence to which Bowman is entitled under *Brady*, such evidence will be disclosed to Bowman prior to commencement of a new trial.

For the reasons set out above, we will reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals for entry of an order granting Bowman a new trial and instructing the trial court to review Young's report to determine

---

* The Commonwealth argued that Bowman's entire appeal must fail by procedural default, since Bowman failed to make the report, on which his claims are based, a part of the appellate record and since "nothing the trial court said or did prevented him from doing so."

We reject the Commonwealth's contention because it is not supported by the record:

[Bowman's Counsel]: But could we at least place that report under seal for appellate purposes?

The Court: I just don't feel we have that situation, sir. I don't feel we have that.

whether it contains further material and possibly exculpatory evidence.

*Reversed and remanded.*