COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Annunziata and Senior Judge Hodges

TYRONE OSCAR JACKSON
 s/k/a TYRONE R. JACKSON
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1558-94-1     JUDGE LARRY G. ELDER
                                      DECEMBER 5, 1995
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      John K. Moore, Judge

            Andrew M. Sacks (Sacks, Sacks & Imprevento, on
            brief), for appellant.

            Margaret Ann B. Walker, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on brief),
            for appellee.


     Tyrone Jackson (appellant) appeals his conviction for

abduction with intent to defile in violation of Code § 18.2-48.

Appellant contends (1) insufficient evidence supported his

conviction and (2) the trial court erred in overruling his motion

to set aside the verdict, where the Commonwealth failed to

produce exculpatory evidence prior to trial.  Because we agree

with appellant's second contention, we reverse the conviction and

remand the case for further proceedings if the Commonwealth be so

advised.

     Viewed in the light most favorable to the Commonwealth, the

facts show that the fifteen-year-old victim was talking on a pay

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

phone at a convenience store in Virginia Beach in the early evening hours of January 4, 1993. Appellant overheard the victim's phone conversation, in which the victim discussed with his girlfriend how the two could obtain money for her abortion. The victim testified he was desperate for money at the time and "would have done almost anything for money."

Appellant interrupted the phone conversation and told the victim he would pay him to help appellant paint and move furniture. The victim accepted the offer and agreed to accompany appellant in appellant's car to a bank so that the victim could be paid in advance. The victim testified, "I didn't see no [sic] problem with it because I am a trusting person."

After the two parties entered appellant's vehicle, appellant revealed he did not have his bank card for the automatic teller machine and said he needed to retrieve the card from his apartment. Once at the apartment, the victim willingly assisted appellant in bringing luggage from appellant's car into the apartment. After appellant and the victim entered appellant's apartment, the two engaged in general conversation. The victim testified appellant then went to his bedroom and asked the victim to join him so that he would not "have to yell across the apartment" to continue their conversation.

When the victim entered the bedroom, appellant turned on a television and began playing a pornographic video. The victim testified he felt uncomfortable and placed a fake phone call to

2

his girlfriend to occupy the time. Appellant then asked the victim to sit on his water bed; when the victim did so, appellant pushed him back onto the bed. The victim testified appellant pinned him to the bed and ignored his requests to leave him alone. When appellant removed the victim's penis from his pants, the victim blacked out, only to awaken to find appellant's mouth on his penis. After the victim ejaculated, he dressed and ran out of appellant's apartment, punched the glass out of a fire extinguisher box to secure the fire extinguisher for protection, went to a neighbor's house, and called the police.

The victim also testified as to the following facts: prior to the sexual encounter, appellant did not threaten or intimidate him; he willingly entered appellant's car; he had no reason to fear appellant up until the time appellant pushed him onto the bed; appellant never concealed his true name or identity; and appellant did not try to prevent him from leaving the apartment prior to the sexual encounter.

Appellant admitted he met the victim at the convenience store; he offered to pay the victim to paint and move some furniture in his apartment; and he offered to find the victim a job at the restaurant where he was employed. Appellant testified the victim voluntarily accepted an invitation to his apartment to allow him to get some money to serve as an advance payment. Appellant testified that nothing sexual occurred in the apartment and that he never deceived the victim in any way. Appellant

3

testified the victim left appellant's apartment "to get his wallet" from appellant's car but then never returned. There was no evidence that appellant again offered, once the parties were in his apartment, to get his bank card or to go to the bank.

A jury acquitted appellant on the charge of forcible sodomy, but convicted him of abduction with intent to defile. After judgment, appellant sought a new trial on the ground the Commonwealth failed to produce exculpatory evidence in the form of the victim's January 4, 1993 statement to police. Appellant sought to show the victim made inconsistent statements to the police, which were both exculpatory and material to the results of the trial. The trial court overruled the motion.

We hold that the trial court erred in failing to set aside the verdict after it learned the Commonwealth failed to produce certain pieces of exculpatory and material evidence. Well-accepted principles of law guide our analysis.

> Fairness to the defendant requires the Commonwealth's pretrial production of exculpatory evidence under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Brady v. Maryland, 373 U.S. 83, 87 (1963). And evidence that impeaches the credibility of a Commonwealth witness is exculpatory evidence. Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986)(citing United States v. Bagley, 473 U.S. 667, 676-77 (1985)).

Ramdass v. Commonwealth, 246 Va. 413, 420, 437 S.E.2d 566, 570 (1993)(emphasis added), vacated on other grounds, __ U.S. ___, 114 S. Ct. 2701 (1994)(other subsequent history omitted). Not only must such evidence be exculpatory, but it must also be

4

material.  See Mackenzie v. Commonwealth, 8 Va. App. 236, 244, 380 S.E.2d 173, 177 (1989).  "Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.  A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding."  Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d 110, 112 (1994)(citation omitted).  "If the defendant does not receive such evidence, or if the defendant learns of the evidence at a point in the proceedings when he cannot effectively use it, his due process rights as enunciated in Brady are violated."  Id., 445 S.E.2d at 111 (citation omitted).

In this case, appellant filed a pretrial motion for discovery pursuant to Rule 3A:11, requesting, inter alia, production of any exculpatory evidence.  Despite this request, the Commonwealth did not provide appellant with the victim's January 4, 1993 statement to police, even after the preliminary hearing, "presumably because the prosecution determined that the report did not contain material exculpatory evidence."  Id., 445 S.E.2d at 112.

Appellant argues he was denied the opportunity at trial to explore material inconsistencies between the victim's preliminary hearing and trial testimony and the statement given to police on January 4, 1993.  Appellant points to four separate material issues.

First, at the preliminary hearing and again at trial, the victim testified he did not know how his shoes were removed. However, in his January 4, 1993 statement to police, the victim stated appellant removed his shoes.

Second, the victim testified at the preliminary hearing and the trial that appellant pulled down his pants and two pairs of underwear and then performed oral sodomy upon him. However, in his January 4, 1993 statement to police, the victim stated that although appellant pulled the victim's pants down, his underwear remained in place, and appellant stuck his hand down the underwear and pulled the victim's penis out.

Third, the victim testified at trial that appellant first pinned him to the bed and then pulled up his shirt and felt his stomach. However, in his January 4, 1993 statement to police, the victim stated this event occurred before appellant pinned him to the bed.

Fourth, the victim testified at the preliminary hearing and the trial that he "blacked out" during the alleged sodomy encounter and therefore could not remember what transpired during the alleged sodomy. However, in his January 4, 1993 statement to police, the victim never mentioned any such blackout and never indicated he could not recollect certain portions of the sexual encounter.

In determining whether the trial court properly ruled, we are reminded that:

> Our role in assessing whether the availability of this information would have produced a different result is difficult.  We must look at the totality of the circumstances with an awareness of the "difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response" to the pre-trial request for <u>Brady</u> information.

<u>Bowman</u>, 248 Va. at 134, 445 S.E.2d at 112 (citation omitted).

In this case, the trial court incorrectly overruled appellant's motion with respect to the four pieces of exculpatory and material evidence.  Appellant's inability to impeach the victim's in-court testimony concerning these pieces of information affected appellant's right to a fair trial.  Specifically, the Commonwealth deprived appellant of his right to fully explore the one issue which played a critical role in the trial--the victim's credibility.  One fair inference to draw from the jury's inconsistent verdicts is that the jury simply did not believe the victim's testimony as it related to the act of sodomy, but did believe that appellant deceived the victim into returning to his apartment to defile him.  If appellant had been afforded the opportunity to fully cross-examine the victim concerning the four pieces of information the Commonwealth failed to disclose, the jury very well may have decided to also acquit appellant of abduction with intent to defile.  In other words, there is a "reasonable probability" that these pieces of exculpatory information might have proven to be the proverbial "straw that broke the camel's back."

7

As the trial court recognized, the jury's determination of appellant's guilt or innocence hinged almost solely on the credibility of appellant and the victim.  Based upon the record before us, and in light of the verdicts rendered, the Commonwealth's failure to produce these four pieces of impeachment evidence undermines our confidence in the jury's verdict convicting appellant of abduction with intent to defile.  We therefore hold that because this evidence was exculpatory and material and was withheld from appellant in violation of <u>Brady</u>, appellant is entitled to a new trial.

Accordingly, we reverse the conviction and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>