COURT OF APPEALS OF VIRGINIA


Present:  Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


DARRYL A. MITCHELL
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2606-07-4                       JUDGE WILLIAM G. PETTY
                                                         APRIL 21, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

        Anna K. Livingston (The Law Offices of Yeager & Thelin, P.C., on
        briefs), for appellant.

        Benjamin H. Katz, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        A jury convicted appellant Darryl A. Mitchell of robbery in violation of Code § 18.2-58.  On

appeal, Mitchell argues that his conviction should be reversed because the trial court erroneously

denied his request for an *in camera* review of the police file following the trial court's determination

that there had been a <u>Brady</u> violation in this case.[1]  For the reasons explained below, we disagree

with Mitchell and affirm his conviction.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The question Mitchell presents on appeal is:

                Did the trial court err on January 19, 2007, when it denied
                Defendant's motion for *in camera* review after finding a clear
                <u>Brady</u> violation before the trial and which error was compounded
                when it denied a hearing on said exculpatory evidence requested
                during post-trial motions?

Because we conclude that the trial court did not err in denying Mitchell's motion for an *in
camera* review, we need not address the second part of his question presented.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. On appeal, we view those facts and incidents "in the light most favorable to the Commonwealth, the party prevailing below, giving it all reasonable inferences fairly deducible from the evidence." Bowling v. Commonwealth, 51 Va. App. 102, 104, 654 S.E.2d 354, 355 (2007) (citing Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993)). On August 31, 2005 the victim was working as a taxicab driver. The victim picked up an individual he later identified at trial as Mitchell from BWI airport in Baltimore and drove him to a location in Fairfax, Virginia. When they arrived at Mitchell's destination, Mitchell and the victim conversed for a few moments before Mitchell began punching the victim repeatedly. Mitchell took the victim's cell phone and $143 from the victim's shirt pocket. Mitchell continued to assault the victim, punching him several times in the kidneys and kicking him before running away.

After Mitchell ran away, the victim saw another individual in the area, who police later identified as Justin Bolden. After police arrived, the officers brought Bolden over to the victim and asked whether Bolden was the person who had robbed him. The victim stated that he was not, but that he had been in the area immediately after the robbery.

Detective Fulk, the investigating officer, eventually arrested Bolden based on his belief that Bolden was "involved" in the robbery and "there" at the time of the offense. The detective also believed that Bolden was an accessory to the robbery, despite the victim's assurance that it was Mitchell who had committed the crime. Eventually, Bolden told Detective Fulk that he was a friend of Mitchell's and had allowed Mitchell to hide in his home after the robbery; he had not told the detective this information earlier because he did not want to "rat on [his] friend." The

Commonwealth subsequently dropped all of the charges against Bolden, and Bolden's counsel testified at Mitchell's trial that there was no firm agreement reached to drop the charges in exchange for Bolden's testimony against Mitchell and that Bolden knew that the charges against him could be reinstated.

After Bolden was released, the victim identified Mitchell's picture in a photographic array. Following Mitchell's indictment for robbery, his counsel submitted a written discovery request to the Commonwealth's Attorney on December 6, 2006. On January 4, 2007, Mitchell also filed a motion to compel exculpatory evidence, seeking exculpatory evidence relating to Bolden's arrest for the robbery. Mitchell also requested, as part of his motion to compel, that the trial court "take the Commonwealth's file in this matter and complete an *in camera* review to insure that nothing further has been withheld regarding this allegation." In response, the Commonwealth filed a letter, dated January 9, 2007, detailing Detective Fulk's investigation, including excerpts from the detective's report. The letter explained the events that led to Bolden's arrest and the charges against him later being dismissed.

Following a hearing on Mitchell's motion to compel, the trial court determined that the information regarding Bolden's earlier arrest for the robbery was exculpatory. The trial court entered a discovery order requiring the Commonwealth to disclose all Brady materials on January 25, 2007, but it denied Mitchell's motion to compel and did not perform an *in camera* review of the Commonwealth's file. On January 30, 2007, the Commonwealth filed a supplemental response to Mitchell's discovery request, which detailed the circumstances of Bolden's arrest.

On March 2, 2007, the trial court denied Mitchell's motion to suppress his identification by the robbery victim. At the March 2 hearing, Mitchell had the opportunity to question Detective Fulk regarding his investigation, including the initial arrest of Bolden for the robbery. On March 23, 2007, the trial court denied Mitchell's motion to suppress statements he made to law

enforcement. On March 27, 2007, a jury convicted Mitchell of robbery and imposed a sentence of five years' imprisonment. During the jury trial, Mitchell again had the opportunity to question Detective Fulk regarding his conduct during the investigation, as well as the victim's identification of Mitchell as the robber and Bolden's arrest and release. On May 3, 2007, Mitchell moved the trial court to either set aside the verdict or grant him a new trial. The court took the matter under advisement and ultimately denied the motion on September 7, 2007. The trial court entered the final order in this case on October 18, 2007. This appeal followed.

## II.

Mitchell has raised a narrow issue on appeal: whether the trial court erred on January 19, 2007 when it denied his motion for an *in camera* review of the investigatory file after the trial court determined that a Brady violation had taken place. Accordingly, we need not address whether the information regarding Bolden's arrest was material—instead, we need only determine whether the trial court had a duty on these facts to conduct an *in camera* review of the Commonwealth's entire file. After careful consideration of the record and relevant law, we conclude that it did not.

Although the Constitution does not accord a defendant the right of unrestricted access to the government's files, see Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987), a criminal defendant has a due process right to "evidence favorable to [him] where the evidence is material to either guilt or to punishment . . . ." Brady v. Maryland, 373 U.S. 83, 87 (1963). "If the defendant does not receive [exculpartory] evidence, or if the defendant learns of the evidence at a point in the proceedings when he cannot effectively use it, his due process rights as enunciated in Brady are violated." Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d 110, 111-12 (1994) (citations omitted). Because the responsibility for determining whether evidence is exculpatory lies with the prosecution, the parties may frequently find themselves "at an impasse in their respective views of the nature of the evidentiary materials." Id.

When there is a dispute over the nature of the evidence, the trial court may, in its discretion, agree to review the disputed material *in camera*. Id. "Whether that discretion was properly exercised will depend on the specific factors of each case, such as the reasons given by the defense in justifying access to the disputed material, the time of the request, or the amount of material involved." Id. at 135-36, 445 S.E.2d at 113 (citing United States v. Agurs, 427 U.S. 97, 106 (1976); State v. Hardy, 235 S.E.2d 828, 841-42 (N.C. 1977); Daniel J. Capra, Access to Exculpatory Evidence: Avoiding the Agurs Problems of Prosecutorial Discretion & Retrospective Review, 53 Fordham L. Rev. 391 (1984)).

A court does not, however, abuse its discretion when it declines a request to review an investigatory file simply because it *might* contain exculpatory evidence: "The adversary system does not permit either party to 'engage in groundless fishing expeditions, with the [trial] courts as their unwitting (and perhaps unwilling) agents.'" United States v. Trevino, 89 F.3d 187, 192 (4th Cir. 1996) (quoting United States v. Zolin, 491 U.S. 554, 571 (1989)). Mitchell recognizes this principle in his brief, noting that "[i]t is well established that a criminal defendant may not require a trial court to comb through the investigative materials of the prosecution with the speculative hope that something of value may be found. The defendant must first establish a reasonable basis for his claim that the records to be reviewed contain material evidence." See Hughes v. Commonwealth, 18 Va. App. 510, 526, 446 S.E.2d 451, 461 (1994) (A criminal defendant asserting a Brady violation must "*prove* the favorable character of evidence he claims to have been improperly suppressed. Speculative allegations are not adequate." (emphasis in the original) (citations omitted)).

Here, the record does not contain any information to establish that exculpatory evidence was withheld from Mitchell. Furthermore, Mitchell provided no reason—beyond his speculative belief that there must have been more information in the file—for the trial court to conduct an *in camera*

review. Cf. Bowman, 248 Va. at 136, 445 S.E.2d at 113 (holding that trial court abused its discretion in refusing a request for an *in camera* inspection of a *specific* police report where there was "a legitimate basis for [defendant's] belief that the report might contain additional material exculpatory evidence"). Mitchell argues the trial court should have read through the Commonwealth's file to determine what, if any, other exculpatory information related to Bolden's arrest existed. Mitchell's theory seems to be that because Bolden was originally arrested, there *must* have been more information pointing to his guilt in the file than that which the Commonwealth disclosed and that therefore the trial court abused its discretion in failing to review the file. This is mere conjecture. Accordingly, we hold that the trial court did not abuse its discretion in refusing to conduct an *in camera* review of the Commonwealth's file.

Further, even after cross-examining Detective Fulk twice, Mitchell is unable to point to specific exculpatory evidence supporting his claim. The record shows that on March 2, 2007, the trial court heard Mitchell's motion to suppress identification. At that time, defense counsel questioned Detective Fulk regarding the circumstances of Bolden's arrest, including whether the victim ever identified Bolden as the robber, various discrepancies in the police reports, and the detective's basis for arresting Mr. Bolden in the first place. At trial, Mitchell called the detective as a witness, and again questioned him extensively regarding Bolden's arrest. Thus, whatever exculpatory evidence that existed pertaining to Bolden's arrest was presented to the jury.

III.

While it may be "difficult for [Mitchell] to imagine a robbery investigation conducted over the course of almost two years, by a professional experienced police officer, who would not record any of the information of that investigation, depending instead on his memory," Defendant's Notice & Motion For A New Trial at 5, that mere belief is not sufficient to establish an affirmative duty on the part of the trial court to cull through the Commonwealth's file. For the foregoing reasons, we

conclude that the trial court did not abuse its discretion when it refused to conduct an *in camera* review of the Commonwealth's file in this case.

Affirmed.