COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Decker and AtLee
Argued at Salem, Virginia


ROSENDO E. JUAREZ

                                                    MEMORANDUM OPINION[*] BY

v.       Record No. 0113-14-3              JUDGE MARLA GRAFF DECKER
                                                       FEBRUARY 16, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

Marvin D. Miller (Law Office of Marvin D. Miller, on briefs), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Rosendo E. Juarez appeals his conviction for rape in violation of Code § 18.2-61. He

challenges the circuit court's rulings on two discovery issues. He argues that the court erred by

failing to conduct an *in camera* review of certain documents that he alleged were in the possession

of the Commonwealth to determine whether they were exculpatory and should have been produced

in discovery. He further asserts that the court erred by quashing his subpoena *duces tecum* to a third

party, the Collins Center, which provided therapy services to the victim. We hold that review of

these assignments of error is barred based on the record before this Court on appeal. Therefore, we

affirm the appellant's conviction.

I. BACKGROUND

The appellant was accused of raping J.J., his thirteen-year-old daughter. The day after

the rape, Maria Marlenys Garcia—the appellant's wife and the victim's stepmother—questioned

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

J.J., who tearfully admitted that the appellant had engaged in "sexual relations" with her. Garcia reported the incident to staff at J.J.'s school, who contacted the police.

In a recorded forensic interview at the Valley Children's Advocacy Center (Advocacy Center), J.J. reiterated that the appellant had "sex" or "sexual intercourse" with her.[1] Police recovered a bed sheet from the victim's room, and DNA testing proved that the appellant's semen was on the sheet.

A key issue in the case was whether the penetration necessary to prove rape occurred. Prior to trial, the appellant sought to obtain discovery from two different sources that he believed might prove that the victim had made conflicting statements on the subject. He sought discovery from the Commonwealth of records from the Advocacy Center. He also sought, directly from the Collins Center through a subpoena *duces tecum*, records of treatment that J.J. received there from therapist Ana Arias. The Commonwealth and the Collins Center objected, and after a hearing, the circuit court denied both motions.

At trial, J.J. testified without equivocation that the appellant put his penis "in" her vagina. She also testified that when interviewed at the Advocacy Center, she told the forensic interviewer "exactly what [she] told th[e] jury" at trial. When Garcia testified, counsel for the appellant was unable to elicit any testimony indicating that J.J. had made inconsistent statements about whether

---

[1] The prosecutor and witnesses explained that a forensic interview typically occurs in "a neutral location" and involves a specially trained individual "ask[ing] questions" of the victim in an age-appropriate, "non-leading way" in order to "collect evidence" about the alleged abuse. It is designed to be a single interview that is recorded so that the victim is not subjected to additional trauma by "retelling the story over and over again." See generally State v. Carrion, 100 A.3d 361, 369 & n.11 (Conn. 2014) (discussing multiple forensic interview protocols); State v. Cameron M., 55 A.3d 272, 277-78 & nn.6-7 (Conn. 2012) (detailing witness testimony describing the features and uses of forensic interviews), overruled in part on other grounds, State v. Elson, 91 A.3d 862, 873-80 & n.14 (Conn. 2014).

penetration had occurred.[2]  The appellant also did not elicit any such testimony from Deputy Wayne

Surface or Investigator George Cox, witnesses who had observed the forensic interview on closed

circuit television as it occurred.[3]

The appellant called Arias, the Collins Center therapist named in the subpoena *duces tecum*,

to testify at trial.  Arias testified that she did not attend the forensic interview but viewed the

recording before she met with J.J.  Arias further testified that, "to [her] knowledge," J.J. did not,

"[a]t any time in [Arias'] interaction with [J.J.,] . . . give a version [of the crime] that in any way

differed from the forensic interview."[4]

The appellant did not dispute that DNA evidence linked him to semen found on J.J.'s bed

sheet.  However, he claimed that the semen was from an erotic dream he had while asleep in

another room and that he accidentally transferred it to his daughter's sheets when he attempted to

give her a massage in her own bed.  He said that she objected to the massage and pushed him off

the bed, causing his semen-stained underwear to come in contact with her sheets.

The appellant was convicted of rape and sentenced to life in prison.

----

[2] Counsel tried to elicit testimony regarding a conversation that Garcia had with J.J. about sexual intercourse.  When Garcia attempted to state what J.J. said, the Commonwealth objected on hearsay grounds, asserting that J.J. denied having such a conversation.  The circuit court ruled that Garcia could "testify that the conversation occurred," but it sustained the objection to the extent that the appellant sought to elicit J.J.'s alleged response to Garcia.  The appellant, on appeal, does not assign error to the circuit court's ruling excluding this testimony.

[3] The court limited the prosecutor's questioning of Surface and Cox to "recent complaint" evidence as permitted by Code § 19.2-268.2.  However, on cross-examination of Surface, who testified first, the court ruled that the proscription of Code § 19.2-268.2 is "more directed to the Commonwealth than the defense" and that the appellant's counsel was "welcome" to "get [into] the contents" of any statements that J.J. made.  Despite this invitation, counsel did not attempt to do so with Surface or Cox.

[4] The appellant's counsel did not specifically address the issue of penetration in his examination of Arias.

- 3 -

II.  ANALYSIS

The appellant argues that the circuit court erred by failing to conduct an *in camera* review of "documents" that he alleges were in the possession of the Commonwealth to determine whether they were exculpatory and should have been produced in discovery under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  He further asserts that the court erred by quashing his subpoena *duces tecum* to a third party, the Collins Center, which provided therapy services to the victim.  We hold that our consideration of these issues is procedurally barred.

 A.  *Refusal to Conduct In Camera Review of Documents in the Possession of the Commonwealth*

Prior to trial, the court entered an order permitting the appellant to engage in discovery pursuant to Rule 3A:11(b).  In conjunction with the order, the appellant asked the Commonwealth to produce any written reports and a digital recording of a "mental examination" of the victim made by Janet Flavin of the Advocacy Center.  The Commonwealth replied that the only record from the Advocacy Center was a DVD of the forensic interview.  The prosecutor further represented that he "[knew] of no inconsistent statements or exculpatory information in the DVD" and "ha[d] no evidence affecting the credibility of the prosecution witnesses."  Accordingly, he refused to provide a copy of the DVD to the appellant's counsel.

Subsequently, the appellant filed a motion pursuant to Rule 3A:11 and <u>Brady</u> to compel the Commonwealth to provide the digital recording of the forensic interview.  At oral argument, the circuit court treated the motion as seeking not only the digital recording but also "any relevant written reports of a physical or mental examination of the alleged victim."  The prosecutor represented that the interview of the victim was a forensic interview, not a "mental examination" under Rule 3A:11.  He also reiterated that the only product of the interview was the digital recording.  The appellant accepted these representations.

The parties then turned to whether the appellant was entitled to view the digital recording of the forensic interview. The appellant's counsel contended that Garcia, a witness for the Commonwealth, had alerted counsel that J.J. had made inconsistent statements about whether penetration had occurred. Counsel also proffered that J.J. told Garcia that she had reported to the police that no penetration had occurred. The appellant asked the court to order the Commonwealth to produce the recording or, alternatively, to review the recording *in camera*.

The Commonwealth described the DVD as "our working document from which we try the case" and indicated unequivocally that "no [exculpatory] information [was] on the tape." The prosecutor further represented that J.J.'s testimony at the preliminary hearing was "totally consistent with what [was] on that tape."[5]

The judge accepted the prosecutor's representations as an officer of the court regarding what was recorded on the DVD. The judge further noted that it was not the court's practice to conduct an *in camera* review in the face of every such motion to determine whether the prosecutor was telling the truth. Ultimately, the judge told the appellant's counsel, "[I]f you think I'm wrong as a matter of . . . law" and that "I am obliged to go further than I have just gone [regarding the digital recording] in ascertaining compliance with Brady, let me know." Counsel responded that he would do so, but he took no further action regarding the motion in the twenty-one days between the date of the court's denial of the motion and the date of trial. Nor did he raise any such concerns on the record at trial. Finally, at no point during the hearing on the motion to compel or at trial did the appellant's counsel request any other records in the possession of the Commonwealth or its agents, or argue that any such records existed or were discoverable.

---

[5] The prosecutor also proffered, without objection, that at the time Garcia suggested that J.J. made inconsistent statements about whether penetration occurred, Garcia was "in dire straits" and was "withholding from the child any affection and support." Garcia's testimony at trial provided greater context for the prosecutor's assertion: Garcia indicated that, at some point, she asked J.J. to "drop the charges" against the appellant because she was having great difficulty managing the children while he was incarcerated.

Brady provides a due process right to exculpatory evidence, including impeachment evidence, that is material to guilt or punishment. Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977); see Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986). In order to establish a Brady violation on appeal, a defendant must prove that the failure to produce the evidence caused him prejudice. E.g., Robinson, 231 Va. at 150-52, 341 S.E.2d at 163-65.

However, Brady does not provide a general right of discovery in criminal cases. Lowe, 218 Va. at 679, 239 S.E.2d at 118. Additionally, "[w]hether evidence is material and exculpatory and, therefore, subject to disclosure under Brady is a decision left to the prosecution." Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d 110, 111 (1994) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987)). Mere possibility or speculation that material sought in discovery "might contain 'potentially exculpatory evidence' imposes neither a duty of disclosure upon the Commonwealth nor a duty of inspection *in camera* by the court." Ramdass v. Commonwealth, 246 Va. 413, 420-21, 437 S.E.2d 566, 570-71 (1993) (citation omitted) (quoting Lowe, 218 Va. at 679, 239 S.E.2d at 118), vacated and remanded on other grounds, 512 U.S. 1217, original judgment adhered to on remand, 248 Va. 518, 521, 450 S.E.2d 360, 361 (1994). A motion for *in camera* review of material alleged to be exculpatory pursuant to Brady is reviewed under an abuse-of-discretion standard. See Bowman, 248 Va. at 135-36, 445 S.E.2d at 113.

The appellant makes multiple arguments in support of his appellate challenge to the circuit court's refusal to review "documents in the possession of the Commonwealth" *in camera*. He contends that the refusal was error because the prosecutor "asserted there was no exculpatory evidence" but did not proffer that he had reviewed "all of the Commonwealth's evidence." Additionally, the appellant argues that the court admitted having a policy not to conduct *in camera* review simply because it believed that doing so in every case would be too time consuming.

Finally, he argues that the record establishes a "likelihood or possibility of a different result" if the complaining witness' statements were disclosed.

We hold first that the scope of the appellant's assignment of error challenging the Commonwealth's failure to produce "documents in the possession of the Commonwealth" is much broader than the scope of the error that he preserved below. Rule 5A:18 provides in relevant part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Additionally, "[n]ot just any objection will do." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted on reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). Instead, the rule requires a litigant to articulate an objection with specificity "so that the trial judge . . . know[s] the particular point being made in time to do something about it." Id.; see Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004).

Here, the appellant moved below to compel the production, at most, of a mental examination and a digital recording of a forensic interview conducted at the Advocacy Center. At the motion hearing, the appellant's counsel accepted the prosecutor's representations that the only thing created by the Advocacy Center was a digital recording and that the recording was not subject to discovery under Rule 3A:11 as a mental examination. See, e.g., Alford v. Commonwealth, 56 Va. App. 706, 709, 696 S.E.2d 266, 267 (2010) (holding that a criminal defendant "cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory'" (quoting Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009))). The appellant's argument after that concession referenced only the digital recording and whether it contained any material that was exculpatory under Brady. Consequently, the appellant, at trial, preserved only his challenge to the Commonwealth's failure to

produce the digital recording of the forensic interview conducted at the Advocacy Center.  Because of the narrow scope of the argument presented at the motion hearing, the appellant's claim that the prosecutor failed to attest that he reviewed "all of the Commonwealth's evidence" is simply not cognizable on appeal.

Further, we conclude that the appellant's failure to ask the circuit court to include a copy of the digital recording in the record constitutes a waiver of the right to appellate review of the narrow issue he preserved in the circuit court.  This is so because in order to prove a Brady violation, a defendant must establish prejudice.  See Robinson, 231 Va. at 150-52, 341 S.E.2d at 163-65.  Prejudice requires proof of "a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.  A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding."  Bowman, 248 Va. at 133, 445 S.E.2d at 112 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  Here, we are unable to assess whether any information contained in the digital recording rendered its nondisclosure prejudicial because the appellant failed to ask that the recording at issue be included in the record.[6]  See Garnett v. Commonwealth, 275 Va. 397, 409-10, 657 S.E.2d 100, 108 (2008) (following the *in camera* review of statements *on appeal*, concluding that the summary of the statements disclosed by the Commonwealth was sufficient to defeat the defendant's claim of prejudice); Bowman, 248 Va. at 136 & n.*, 445 S.E.2d at 113-14 & n.*

---

[6] Additionally, the only information on this issue contained in the appellate record indicates that the nondisclosure was *not* prejudicial to the appellant.  First, the prosecutor represented unequivocally that the recording did not contain any indication that J.J. had made inconsistent statements about whether penetration occurred and that her testimony at the preliminary hearing was "totally consistent with what [was] on [the] tape."  Second, as detailed *supra* in Part I, none of the witnesses who testified at trial—including J.J., Garcia, Arias, and two law enforcement officers who observed the forensic interview—provided any indication that J.J. had made inconsistent statements about penetration.  Cf. Moreno v. Commonwealth, 10 Va. App. 408, 419, 392 S.E.2d 836, 843 (1990) (holding that where an accused receives exculpatory information "*at trial*," is "able to use it effectively," and "is not otherwise able to demonstrate prejudice from the late disclosure," any discovery violation "has not deprived him of a fair trial" (emphasis added)).

(concluding that the trial court erred in refusing the defendant's request to seal allegedly exculpatory evidence and make it part of the record to ensure availability for *in camera* review *on appeal*); Ramdass, 246 Va. at 419-21, 437 S.E.2d at 570-71 (upholding the trial court's refusal to review *in camera* certain transcripts for impeachment evidence because "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense" (quoting United States v. Agurs, 427 U.S. 97, 109-10 (1976))); cf. Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (requiring harmless error review in all cases); Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 230 (2015) (recognizing the need for a proffer when evidence is excluded so that the appellate court may determine whether the exclusion was harmless).

Consequently, the appellant's failure to have the digital recording sealed and placed in the record for purposes of appeal prevents the Court from assessing whether prejudice occurred. Accordingly, our review of this assignment of error is barred.

### B. *Quashing of Subpoena Duces Tecum for the Victim's Records from the Collins Center*

The appellant also contends that the circuit court erred in granting the Collins Center's motion to quash his subpoena *duces tecum* for records of J.J.'s treatment there. We hold that the appellant waived his right to contest the circuit court's ruling.

The appellant had multiple subpoenas *duces tecum* issued for those records, both in the juvenile and domestic relations district court (the J&DR court) and the circuit court. The Collins Center moved to quash the J&DR subpoena, and in January 2013, the J&DR court granted the motion to quash. Around the same time, 264 pages of "subpoena duces tecum returns" were

submitted to the J&DR court under seal, but no evidence in the record establishes what those documents were.[7]

In February 2013, after the grand jury had indicted the appellant for rape and the matter had been transferred to the circuit court, the appellant requested the issuance of another subpoena *duces tecum* to the Collins Center. The Collins Center filed a motion to quash the subpoena, contending in part that it sought the disclosure of protected health information for which J.J.'s consent was required under Code § 32.1-127.1:03. The appellant then prepared a new subpoena *duces tecum* for the Center's records. The request was identical to the earlier one except that the cover letter indicated that the appellant's counsel had also mailed a copy of the subpoena request to J.J. in care of the Department of Social Services. In response, the Center notified the circuit court that it had "previously supplied" the records "under seal on February 27, 2013, in response to the subpoena *duces tecum* issued February 12, 2013." The record on appeal, however, contains no documents submitted under seal by the Collins Center or anyone else *on or about February 27, 2013*, and no other mention of any such documents.

At the hearing on the Collins Center's motion to quash, the court found no "substantial basis" for concluding that the information was material and granted the motion to quash. In the course of that hearing, counsel for the Center represented that the records "have been provided to [the court]." The judge indicated that he had not "looked at the records." Nothing in the transcript indicates when the records were submitted, and no exhibits were admitted or filed under seal at the motion hearing.

---

[7] The circuit court record transmitted to this Court also reflects that on the day that the sealed records were filed, the Department of Social Services moved to quash a subpoena *duces tecum* issued to it that was similar to the subpoena served on the Collins Center. The transmitted record does not indicate whether the subpoenaed documents submitted under seal came from the Collins Center, the Department of Social Services, or some other entity.

In this Court, after the appellant's petition for appeal had been granted in part, a dispute arose between the parties regarding whether any documents produced by the Collins Center in response to the subpoena *duces tecum* were part of the record for purposes of appeal. The senior assistant attorney general, representing the Commonwealth, maintained that he consulted with the circuit court clerk's office and was told that most of the documents submitted in January 2013 and contained in the sealed material retained in the circuit court "were provided in response to a subpoena *duces tecum* the [appellant] issued requesting records from the Collins Center." The senior assistant attorney general filed a petition for *certiorari* in this Court asking that the circuit court be directed to transmit the sealed material as part of the record on appeal. The appellant objected, contending that the origin of the sealed material retained by the circuit court was "unknown." He further argued that the statute protecting health records, Code § 32.1-127.1:03, required the circuit court, upon granting the motion to quash, to return the records to the Center and that this Court must presume compliance with that requirement.

This Court issued an order directing the circuit court to determine whether the sealed documents were part of the record.[8] In a letter opinion and order, the circuit court did not expressly rule regarding whether the documents at issue were the records submitted by the Collins Center under seal. It ruled expressly only that the documents submitted in response to the quashed subpoena *duces tecum* to the Collins Center "are not part of the record." It found that the appellant never asked to have the documents made part of the record for any purpose. It further found that

---

[8] The appellant argues on brief that this Court may not consider "[w]hat happened" when we directed the circuit court "to determine if the unknown documents were part of the record." However, the parties filed numerous motions and responses regarding the issue in this Court during the pendency of the present appeal. Additionally, the circuit court issued the opinion and order at issue specifically in response to the order of this Court requiring clarification of the contents of the record. Consequently, the motions, responses, and order are part of the record in this Court and may be considered in resolving the appeal. See, e.g., Harris v. Commonwealth, 262 Va. 407, 413, 551 S.E.2d 606, 609 (2001) (noting that an appellate court may take judicial notice of its own records in a case).

- 11 -

"there was no proffer of evidence as to [the documents'] contents"; no reference was made to them after the hearing; and none of them were introduced at trial. The court recognized that documents offered at trial but rejected on some evidentiary basis are sometimes "marked as 'offered but not admitted,'" but it stated that this did not occur with regard to the disputed documents.

When a defendant seeks the disclosure of evidence through a subpoena *duces tecum*, the standard for determining the materiality of the evidence sought is "whether 'a substantial basis for claiming materiality exists.'" Cox v. Commonwealth, 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984) (quoting Agurs, 427 U.S. at 106). A subpoena should not be issued for use as "a 'fishing expedition' in the [mere] hope of uncovering information material to the defendant's case." Farish v. Commonwealth, 2 Va. App. 627, 630, 346 S.E.2d 736, 738 (1986). Additionally, this Court may not reverse a conviction based on a trial court's refusal to grant a subpoena unless the defendant proves prejudice. Nelson v. Commonwealth, 41 Va. App. 716, 728, 589 S.E.2d 23, 29 (2003), aff'd, 268 Va. 665, 604 S.E.2d 76 (2004). Finally, review of a trial court's decision on a motion to quash a subpoena *duces tecum* is conducted under an abuse-of-discretion standard. Schwartz v. Commonwealth, 45 Va. App. 407, 450, 611 S.E.2d 631, 652 (2005).

We hold that this assignment of error is procedurally barred. As stated, part of the test for determining whether the circuit court committed reversible error by granting the motion to quash requires an evaluation of whether the appellant suffered any prejudice from the claimed error. See Nelson, 41 Va. App. at 728, 589 S.E.2d at 29; cf., e.g., Ferguson, 240 Va. at ix, 396 S.E.2d at 675 (requiring harmless error review in all cases). Here, the appellant failed to ask the circuit court to make the documents at issue part of the record for purposes of appeal. See, e.g., Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (noting an appellant's burden to present an adequate record); see also Garnett, 275 Va. at 410, 657 S.E.2d at 108 (affirming after *in camera* review *on appeal* of allegedly exculpatory statements of the victim that were withheld from

the defendant based on a determination that they were not material). Additionally, when the Commonwealth sought to clarify whether the documents were, in fact, part of the record on appeal and warned the appellant about his duty to provide a complete record for that purpose, the appellant steadfastly maintained that the documents were not made part of the record below and, therefore, are not part of the record before this Court. In part as a result of that argument, when this Court asked for a determination regarding the status of the documents, the circuit court ruled that the Collins Center documents are not part of the record. Alford, 56 Va. App. at 709, 696 S.E.2d at 267 (holding that a criminal defendant may not take inconsistent positions in the course of a prosecution); see also Logan v. Commonwealth, 47 Va. App. 168, 172 n.4, 622 S.E.2d 771, 773 n.4 (2005) (*en banc*) (noting that an appellant's concession of law, even if erroneous, may qualify as a Rule 5A:18 waiver or withdrawal of an appellate challenge and that the Court may accept the concession "as a basis for not deciding [the issue]"). Finally, nothing suggests that the circuit court erred in its determination that the documents are not part of the record below.

Based on these facts, the records at issue are not available for this Court's review, and we cannot determine whether the claimed error in granting the motion to quash was prejudicial. That analysis is necessary under the law. Consequently, the Court's review of the issue is procedurally barred.

### III. CONCLUSION

We hold that the appellant waived his claim that the circuit court erred by refusing to conduct an *in camera* review of items in the possession of the Commonwealth, including a recording of a forensic interview of the victim. We further hold that the appellant waived his claim that the court erred by quashing a subpoena *duces tecum*. Therefore, we affirm the appellant's conviction.

Affirmed.